**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| NICOLE CHRIST, | : | CASE NO. 1:17-cv-713 |
| Plaintiff, | : | Judge William O. Bertelsman |
| v. | : | **DEFENDANT ULTIMATE REHAB,** |
| | | **LTD.'S CONSOLIDATED MOTION TO** |
| UNIVERSITY OF FINDLAY, et al., | : | **DISMISS FIRST AMENDED** |
| | | **COMPLAINT AND REPLY IN** |
| Defendants. | : | **SUPPORT OF MOTION TO DISMISS** |
| | | **COMPLAINT** |

## I.    INTRODUCTION

Plaintiff's attempts to fit a square peg into a round hole are unpersuasive and futile. She cites to no case in which an unpaid student internship was found to be a public accommodation, and she cites to no case in which an unpaid student internship was found to create a sufficient employment relationship or have a sufficient impact on employment opportunities for purposes of employment discrimination law. Indeed, the applicable case law is uniform in concluding that an unpaid student internship does *not* create liability under employment discrimination law.

## II.    PROCEDURAL BACKGROUND

In her Complaint (Doc. 1) ("Complaint"), filed against both Defendant University of Findlay (the "University") and Defendant Ultimate Rehab, Ltd. ("Ultimate Rehab"), Plaintiff alleges that Ultimate Rehab denied her access to its public accommodation in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12102, *et seq.*, ("ADA") and discriminated against her with regard to the terms and conditions of her employment in violation of both Title I of the ADA and the Ohio Civil Rights Act, O.R.C. § 4112, *et seq.*, ("OCRA"). On December 22, 2017, Ultimate Rehab filed its Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and Memorandum in Support (Doc. 8) ("Motion") seeking dismissal of all claims against it.

In response to Ultimate Rehab's Motion, Plaintiff simultaneously filed a First Amended Complaint (Doc. 11) ("Amended Complaint") and a Memorandum in Opposition to Ultimate Rehab's Motion (Doc. 12) ("Response"). In her Amended Complaint, Plaintiff continues to pursue claims against Ultimate Rehab for denying her access to its public accommodation in violation of Title III of the ADA and for employment discrimination in violation of the OCRA. (Amended Complaint, ¶¶81-86, 94-100). She has, however, abandoned her claim for employment discrimination in violation of Title I of the ADA and has added a claim asserting that Ultimate Rehab denied her access to its public accommodation in violation of the OCRA. (Amended Complaint, ¶¶87-93).

Although the Complaint did not include a claim relating to the public accommodation provisions of the OCRA, it did include a claim relating to the public accommodation provisions of the ADA, and Ultimate Rehab's Motion outlined the reasons that such a claim must be dismissed. (Complaint, ¶¶86-91; Motion, pp. 5-7). As Plaintiff correctly notes, the OCRA's public accommodation provision is substantively similar to that of the ADA and is to be interpreted in accordance with the ADA. *Esparza v. Pierre Foods*, 923 F.Supp. 2d 1099, 1103 (S.D. Ohio 2013); *Columbus Civ. Serv. Comm. v. McGlone*, 82 Ohio St. 3d 569, 573 (1998); *Plumbers & Steamfitters v. Ohio Civil Rights Comm.*, 66 Ohio St.2d 192, 196 (1981). For this reason, Plaintiff's Response includes briefing relating to her claim that Ultimate Rehab denied her access to its public accommodation in violation of the OCRA. (Response, pp. 3-7).

For the convenience of the Court, to avoid repetitive pleadings, and in the interest of judicial economy, Ultimate Rehab requests that its Motion be treated as a motion to dismiss all claims against it as set forth in the Amended Complaint and that the bases set forth for its request that Plaintiff's ADA Title III claim be dismissed be considered with regard to the OCRA public accommodation claim made by Plaintiff in her Amended Complaint.

2

III.    **ARGUMENT**

    A.    **Plaintiff Cannot Be Both an Employee of Ultimate Rehab and an Individual Entitled to Public Accommodation by Ultimate Rehab.**

In her Response, Plaintiff continues to maintain that Ultimate Rehab denied her an accommodation to which she was entitled, both as an employee of Ultimate Rehab and as a member of the public. However, Plaintiff was either an employee or a member of the public or, as Ultimate Rehab argues, neither. She cannot, as a matter of law, be both. *See Bauer v. Muscular Dystrophy Ass'n*, 268 F. Supp. 2d 1281, 1293 (D. Kan. 2003); *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 122 (3rd Cir. 1998) ("Title III was not intended to govern disability discrimination in the context of employment"); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612 (3rd Cir. 1998) ("Terms and conditions of employment are covered under Title I, not Title III. . . . Therefore, [the plaintiff] cannot state a claim against her employer . . . pursuant to Title III."). The fact that Plaintiff, herself, cannot focus her claims on either the public accommodation or the employment provisions of the ADA and OCRA further supports Ultimate Rehab's argument that none of Plaintiff's claims has any basis in law.

    B.    **Plaintiff Has Not Stated Claims Against Ultimate Rehab Under Title III of the ADA or the OCRA for Failure to Provide Her With Public Accommodation.**

In support of her claims under Title III of the ADA and under the OCRA that she was denied a public accommodation by Ultimate Rehab, Plaintiff cites to three cases that are inapplicable to the instant matter[1]. (Response, pp. 4-5). Indeed, she ignores the common sense reality that Ultimate Rehab is not in the business of providing students with internship opportunities. There is no reasonable interpretation of Title III of the ADA or of the OCRA that covers an unpaid student internship at Ultimate Rehab as a public accommodation.

---

[1] Ultimate Rehab has been unable to find any case in which Title III of the ADA, the OCRA, or any other public accommodation law has been applied to an unpaid student intern. Based on the lack of relevant case citation in Plaintiff's Response, it would seem that Plaintiff would agree there are no such cases. The absence of relevant cases strongly suggests that an unpaid student internship is not a public accommodation.

After asserting that statutory language cited by Ultimate Rehab in its Motion "does not have any bearing upon what the ADA requires as a general matter," Plaintiff suggests that the Supreme Court decided this issue in *PGA Tour v. Martin*, 532 U.S. 661 (2001). (Response, p. 4). In fact, the language of the Court to which she refers is not even dicta. Rather, it is a description of the arguments made by the parties in that case. (Response, p. 4). In fact, the Court gives no guidance whatsoever on this argument, noting that "[w]e need not decide whether [the PGA]'s construction of the statute is correct, because [the PGA]'s argument falters even on its own terms." *Martin*, 532 U.S. at 679. Even if the public accommodation requirements of Title III of the ADA and the OCRA are limited to "clients or customers" as the PGA (and Ultimate Rehab) contended, the majority of the Court found, the golfer was a client or customer of the PGA[2]. *Id.* at 679-80.

Notably, Justice Scalia did come to a conclusion regarding the statutory language at issue in the decision's dissent. Justice Scalia succinctly concluded that "Title III applies only to customers." *Id.* at 695. Other courts have applied Justice Scalia's reasoning in concluding that volunteer counselors at a camp and a physician with privileges at a hospital were not customers and were, therefore, not entitled to the protections of Title III. *See Bauer v. Muscular Dystrophy Assoc., Inc.*, 268 F.Supp. 2d 1281, 1292 (D. Kan. 2003); *Wojewski v. Rapid City Regional Hosp., Inc.*, 394 F.Supp. 2d 1134 (D. S.D. 2005).

Plaintiff correctly asserts that there are cases in which physicians with staff privileges at hospitals have been found to be protected by Title III. *See Badri v. Huron Hosp.*, No. 1:08CV01913, 2009 WL 10689494 (N.D. Ohio Aug. 14, 2009); *Menkowitz v. Pottstown Mem. Med. Ctr.*, 154 F.3d 113 (3d Cir. 1998). However, there are also many examples of cases finding the opposite. *See, e.g., Wojewski*. Regardless, however, Plaintiff fails to explain how a physician with staff privileges at a hospital is analogous to an unpaid student intern. Hospitals are in the business of

---

[2] A golfer playing in the U.S. Open cannot reasonably be compared to an unpaid student intern.

providing medical services to patients, and hospitals need independent contractor physicians to provide such services, so hospitals are necessarily in the business of providing staff privileges to physicians. While Ultimate Rehab is also in the business of providing medical services to patients, Ultimate Rehab does not need unpaid student interns to provide such services, and Ultimate Rehab is not in the business of providing unpaid internships to students.

The holding in *Menkowitz* is narrow: "We therefore hold that a medical doctor with staff privileges – one who is not an employee for purposes of Title I – may assert a cause of action under Title III of the ADA . . . ." *Menkowitz*, 154 F.3d at 122. The court cites three "observations" supporting its conclusion. First, the court notes that, absent recourse under Title III, the plaintiff in that case would have had no legal recourse at all. This factor is not present in the instant case, as there is no dispute that Plaintiff's claims against the University, which is the entity that made the decision to release Plaintiff from its Occupational Therapy Weekend College Program[3], may proceed[4]. Second, the court notes that failing to permit a Title III claim would result in an unacceptable inconsistency between the ADA and the Rehabilitation Act, 29 U.S.C. § 794, *et seq*. Again, this factor is not present in the instant case[5]. Finally, the court notes that the administrative guidance issued by the Justice Department interprets Title III to allow a cause of action for

---

[3] Ultimate Rehab notes that it has been brought into this litigation merely because it happened to be the second Level II field placement at which Plaintiff was unsuccessful and because the University has a policy that two failed Level II field placements result in removal from its Occupational Therapy Weekend College Program. (Amended Complaint, ¶¶ 34, 35, 56). Plaintiff specifically alleges that she failed a prior field placement because her "disability was not accommodated" (Amended Complaint, ¶34), yet that health care provider is not a defendant in this matter. Again, the University established the two-strikes policy, the University concluded that Plaintiff violated that policy, and the University made the decision to remove Plaintiff from its Occupational Therapy Weekend College Program. (Amended Complaint, ¶¶35, 56). It is manifestly unfair to hold Ultimate Rehab liable for Plaintiff's dismissal from the Occupational Therapy Weekend College Program based on a policy established and invoked by the University, particularly when it is alleged to be liable merely because Ultimate Rehab had the misfortune of being the second Level II field placement from which she was dismissed.
[4] The University filed an Answer (Doc. 14) to Plaintiff's Amended Complaint and not a motion to dismiss.
[5] The Rehabilitation Act is inapplicable to Ultimate Rehab, which does not receive federal funding. Plaintiff alleges that the University receives federal funding, and claims under both the Rehabilitation Act and Title III of the ADA are proceeding against the University. (Amended Complaint, ¶¶59-72).

physicians with staff privileges. The administrative guidance provides no such direction with regard to unpaid student interns.

Plaintiff maintains that she has fulfilled her obligations under *Twombly* because she has "pleaded that Ultimate Rehab discriminated against her on the basis of her disability in the full and equal enjoyment of that place of public accommodation." (Response, p. 7). But Plaintiff was not a patient or customer of Ultimate Rehab. She is wholly unable to allege that she was denied an "opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is . . . equal to that afforded to other individuals," as is required to state a claim under Title III of the ADA or the public accommodation provision of the OCRA. 28 C.F.R. ¶ 36.202(b); *see also* ADA Title III Technical Assistance Manual § III-3.1000 ("The phrase 'goods, services, facilities, privileges, advantages, or accommodations' applies to whatever type of good or service a public accommodation provides to its customers or clients.").

As a result, there is no viable legal theory under which she may be successful on her ADA and OCRA claims. She is unable to comply with the *Twombly* standard under Rule 8(a) and her public accommodation claims should be dismissed under Rule 12(b)(6).

**C.     Plaintiff Has Not Stated a Claim Against Ultimate Rehab for Disability Discrimination in Employment.**

Plaintiff acknowledges that Ultimate Rehab was not her employer, yet she continues to pursue a claim for employment discrimination because she claims that Ultimate Rehab "has the ability to affect [her] employment opportunities with third parties." (Response, p. 8). However, Plaintiff fails to describe how Ultimate Rehab had the ability to impact her employment opportunities. Any impact was tenuous, at best. The University – not Ultimate Rehab – established its requirements for completion of its Occupational Therapy Weekend College Program. (Amended Complaint, ¶¶ 18, 20). The University – not Ultimate Rehab – established a policy that two failed field placements would result in dismissal from the Occupational Therapy Weekend College

Program. (Amended Complaint, ¶35). Ultimate Rehab was only one of two failed field placements, and it just happened to be the second failed placement. (Amended Complaint, ¶¶ 29, 34, 38). The University – not Ultimate Rehab – made the decision to invoke its two-strikes policy. (Amended Complaint, ¶56). While the lack of an occupational therapy degree would almost certainly impact Plaintiff's ability to become employed as an occupational therapist, to suggest that Ultimate Rehab was responsible for her failure to be awarded such a degree and that Ultimate Rehab is therefore liable for discrimination because it controlled her employment opportunities grossly distorts reality.

Ultimate Rehab cites numerous cases in its Motion in which unpaid student interns were found to be ineligible for the protections of employment discrimination statutes. (Motion, p. 7). Plaintiff makes no effort to distinguish them from her situation and, instead, ignores them altogether. She once again cites to cases in which the plaintiffs had hospital staff privileges[6]. (Response, pp. 9-10). As described *supra*, hospital staff privileges and an unpaid student internship are not analogous. In *Christopher v. Stouder Memorial Hospital*, 936 F.2d 870 (6th Cir. 1991), for example, the plaintiff had been working as a private scrub nurse at the defendant's hospital. Although the plaintiff was not paid by the hospital, the hospital nevertheless informed her that her services as a clinical nurse specialist would no longer be needed and refused to reinstate her staff privileges. *Id.*, at 872-74. As a practical matter, the court found, the hospital terminated her employment. *Id.* at 874 ("we find that [the hospital]'s control over [the plaintiff]'s ability to practice as a private scrub nurse sufficiently impacted her employment opportunities"). In other words, unlike in the instant case, there was a direct nexus between the hospital's actions and the plaintiff's employment. No such nexus exists here.

---

[6] Plaintiff also cites to *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194 (3d Cir. 1994), which addresses whether a former employee may state a claim for post-termination retaliation. The plaintiff accused her former employer of triggering proceedings to revoke her teaching certificate in retaliation for her pursuit of an employment discrimination claim. Again, it grossly distorts reality to suggest that Ultimate Rehab's dismissal of Plaintiff from an unpaid student internship is analogous to retaliation relating to and arising out of an employment relationship.

In *LeMasters v. Christ Hosp.*, 777 F.Supp. 1378 (S.D. Ohio 1991), a physician whose hospital staff privileges were terminated was found to be an employee for purposes of employment discrimination law because the hospital "control[led her] access to employment opportunities." *Id.* at 1380. The *LeMasters* court suggests that the type of entities that have the requisite control are labor organizations, employment agencies, and employers. *Id.* at 1379; *see also Zaklama v. Mt. Sinai Med. Ctr.*, 842 F.2d 291, 294 (11th Cir. 1988). Ultimate Rehab did not even control whether Plaintiff remained enrolled in the University's Occupational Therapy Weekend College Program, nevertheless whether she was awarded an occupational therapy degree. And it certainly did not control whether she would become employed as an occupational therapist.

In her Amended Complaint, Plaintiff does not allege that Ultimate Rehab was her employer because it was not. Instead, she alleges that her failed unpaid student internship at Ultimate Rehab "prohibited her from working as an occupational therapist." (Amended Complaint, ¶98). But even Plaintiff's own recitation of the facts makes it clear that it was the University – and not Ultimate Rehab – that controlled whether she was awarded an occupational therapy degree. (Amended Complaint, ¶¶35, 56). Ultimate Rehab made the discrete decision to end Plaintiff's unpaid student internship because of her violation of its safety procedures. (Amended Complaint, ¶55). Plaintiff cannot reasonably allege any set of facts under which this discrete decision controlled her access to employment opportunities.

Plaintiff is unable to provide the required factual basis for her legal conclusion that Ultimate Rehab prevented her from working in her chosen field. She is unable to comply with the *Twombly* standard under Rule 8(a) and her employment discrimination claim brought under the OCRA should be dismissed under Rule 12(b)(6).

**IV.** **CONCLUSION**

For the foregoing reasons, as well as the reasons set forth in Ultimate Rehab's Motion, this

Court should dismiss all of Plaintiff's claims against Ultimate Rehab.

Respectfully submitted,

*/s/ David T. Croall*
David T. Croall  (0009149)
Rachel E. Burke  (0066863)
PORTER WRIGHT MORRIS & ARTHUR LLP
250 E. Fifth St., Suite 2200
Cincinnati, Ohio 45202
Phone:  (513) 381-4700
Fax:  (513) 421-0991
dcroall@porterwright.com
rburke@porterwright.com

*Attorneys for Defendant Ultimate Rehab, Ltd.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Defendant Ultimate Rehab, Ltd.'s Consolidated

Motion to Dismiss First Amended Complaint and Reply in Support of Motion to Dismiss was filed

electronically on this 25th day of January, 2018.  Notice of this filing will be sent by operation of the

Court's electronic filing system to the following:

Erin M. Heidrich
Elizabeth Asbury Newman
Freking Myers & Reul LLC
600 Vine Street, Ninth Floor
Cincinnati, Ohio 45202
eheidrich@fmr.com
enewman@fmr.com

Attorney for Plaintiff Nicole Christ

Heidi N. Eischen
Emilie K. Vassar
Eastman & Smith
One Seagate, 24th Floor
Toledo, OH 43604
hneischen@eastmansmith.com
ekvassar@eastmansmith.com

Attorneys for Defendant University of Findlay

/s/ David T. Croall

DMS/10787846v.1

10